IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Nels Theodore Wohlstrom, | ) C/A No. 0:12-2338-MBS-PJG |
| Plaintiff, | ) |
| vs. | ) |
| | ) **REPORT AND** |
| George Wilmore; Eddie Broome; Eddie Moore; Sheriff Bruce M. Bryant, | ) **RECOMMENDATION** |
| Defendants. | ) |

The plaintiff, Nels Theodore Wohlstrom ("Plaintiff"), a self-represented litigant, brings this "land patent" civil action against the named defendants. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC. Plaintiff is a resident of Lake Wylie, South Carolina, and the defendants are local governmental officials in York County, South Carolina. Plaintiff has paid the full filing fee. Plaintiff has not completed the "STATEMENT OF CLAIM" portion of the *pro se* Complaint. Instead, in a separately-filed attachment styled as a motion for order to show cause (ECF No. 2), Plaintiff alleges that the United States of America has "maintained criminal Action to fraudulently occupy aforementioned lands, suffering Patent Infringement, as per Public Law, whereby the creator has been subverted, where a Franchise has been created under Private Acts (Executive Order) and Acts of Commerce (various Patent and Copyright Acts, contrary to Public Acts), want of creation." (ECF No. 2 at 2). Having reviewed the Complaint in accordance with applicable law, the court concludes that it should be dismissed.

PJG

## INITIAL REVIEW GENERALLY

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint. This court is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up

*PJG*

questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Moreover, even when the filing fee is paid, the court possesses the inherent authority to dismiss frivolous complaints. See Ross v. Baron, No. 12-1272, 2012 WL 3590914, at *1 (4th Cir. Aug. 22, 2012); see also Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 307-08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").

Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998); see also Nat'l Fed'n of Indep. Bus. v. Sebelius, 132 S.Ct. 2566, 2576 (2012) (explaining that the federal government possesses only limited powers). Because federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999). Accordingly, a federal court is required *sua sponte* to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." Bulldog Trucking, Inc., 147 F.3d at 352; see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." Pinkley, Inc., 191 F.3d at 399. To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the Complaint provide "a short and plain statement of the grounds for the court's jurisdiction[.]" If, however, the Complaint does not contain "an affirmative pleading of a jurisdictional basis[,] a federal court may find

that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." Id. Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999). If the court, viewing the allegations in the light most favorable to Plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. Id.

If a plaintiff's complaint pleads a colorable claim arising under the Constitution or laws of the United States, he invokes federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[1] See Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452-53 (4th Cir. 2012). However, if the alleged federal claim is "'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy,'" then subject matter jurisdiction does not exist. Id. (citation omitted).

## DISCUSSION

Other courts addressing complaints similar to the one in this case have found alleged "land patents"[2] not to be a sufficient basis for federal jurisdiction and found such complaints to be frivolous. See, e.g., Oneida Indian Nation of N.Y. v. Oneida Cnty., N.Y., 414 U.S. 661, 676-77 (1974) ("Once patent issues, the incidents of ownership are, for the

---

[1] Diversity subject matter jurisdiction is not applicable to this case because the Complaint does not allege complete diversity of parties. See Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011); 28 U.S.C. § 1332.

[2] Land patents were used in the nineteenth century in territories that became states after the Louisiana Purchase. See Thompkins-El v. Wells Fargo Bank Minnesota, C/A No. 05-74715, 2006 WL 2433438, at *3 (E.D. Mich. Aug. 22, 2006) (containing a discussion of the history of land patents).



most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed under a United States patent."); Thompkins-El v. Wells Fargo Bank Minnesota, C/A No. 05-74715, 2006 WL 2433438, at *3 (E.D. Mich. Aug. 22, 2006).

In fact, the magistrate judge's Report and Recommendation in Thompkins-El v. Wells Fargo Bank Minnesota indicates that the current "land patent" doctrine originated with sovereign citizen and militia-type movements approximately twenty years ago:

> Apart from the Rooker-Feldman problem, the Plaintiff fails to state a claim on which relief can be granted. Simply put, this Amended Complaint is totally devoid of merit.
>
> The bulk of the Amended Complaint posits, in a very confused manner, that Plaintiff's title to or interest in the property in question is superior to any entity purporting to hold a security interest because the Plaintiff is the beneficiary of a "land patent" or "land grant." It appears that Plaintiff's "land patent" is, at best, a document she herself filed claiming that she "is the true owner of this property with a land patent which is the only true title to property other than the treaty." Amended Complaint, ¶ 41. There have been a number of similar claims made in this Court and other courts, and Defendant Wells Fargo attached to its motion, as Exhibit A [Docket # 81] a sampling of internet articles detailing how mortgagees, debtors and taxpayers can escape their financial obligations through "declarations of land patents." Every court that has considered this argument has found it to be frivolous. See, e.g., Hedrick v. Coleman, 2005 WL 2671327 (E.D. Mich. 2005) (Tarnow, J.); Hilgeford v. People's Bank, 776 F.2d 176 (7th Cir. 1985) (that title to land may have been given to remote predecessors in centuries past does not prevent the creation of later interests and has nothing to do with later actions arising under state law); Nixon v. Phillipoff, 615 F. Supp. 890, 894 (D.C. Ind. 1985) (land patent claim as a defense to a foreclosure action is a "frivolous legal nullity"); State of Wisconsin v. Glick, 782 F.2d 670, 672 (7th Cir. 1986) ("If self-drafted 'land patents' are frivolous gestures, as we held in Hilgeford, then removal of the state's prosecutions is frivolity on stilts. (Apologies to Jeremy Benthem))."

Thompkins-El, 2006 WL 2433438, at *8.

The decision of the United States District Court for the Eastern District of Michigan in <u>Hilgeford v. Peoples Bank</u>, 607 F. Supp. 536 (E.D. Mich. 1985), *aff'd*, 776 F.2d 176 (7th Cir. 1985), thoroughly explains the frivolousness of the types of cases based on unsupported assertions of a "land patent":

> The alleged bases for jurisdiction are article IV, section 3, clause 2 of the United States Constitution, and an Act of Congress of April 24, 1820, 3 Stat. 566. Article IV, § 3, cl. 2 gives Congress the power to "dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States . . . ," and the Act of Congress of April 24, 1820 was the statute enacted by which the government apparatus for disposing of public lands via issuance of land patents was created. However, neither of these provisions are implicated here. These provisions, and the current statutory machinery for land patents set out at 43 U.S.C. § 1, <u>et</u> <u>seq.</u>, are for land patents to *public lands* of the United States. These provisions allow the United States to grant title to public land to private individuals, thereby creating private title in the patent holder, and extinguishing title in the United States. The "patent" involved here is not a grant by the United States; it is a grant by the plaintiffs. The "patent" here is not a grant to some other holder so as to pass title on to another party; it is a self-serving document whereby the plaintiffs grant the patent to themselves. This "patent" does not involve or concern "public land;" it relates to plaintiffs' private property. The court cannot conceive how these federal provisions are implicated here, and thus federal question jurisdiction is absent.
>
> Of course, the purported "land patent" in this case fails for reasons independent of jurisdiction. As was noted before, the "land patent" attached to plaintiffs' various filings is a grant of a land patent from the plaintiffs to the plaintiffs. It is, quite simply, an attempt to improve title by saying it is better. The court cannot conceive of a potentially more disruptive force in the world of property law than the ability of a person to get "superior" title to land by simply filling out a document granting himself a "land patent" and then filing it with the recorder of deeds. Such self-serving, gratuitous activity *does not*, *cannot and will not* be sufficient by itself to create good title.

<u>Hilgeford</u>, 607 F. Supp. at 538-39 (emphasis in original).

Moreover, the district court in <u>Thompkins-El v. Wells Fargo Bank Minnesota</u> noted that the increased frequency of such claims filed in federal courts was the result of the wide

PJG

dissemination, via the internet, of "land patent" materials, which were later used in suits challenging land use planning and "zoning" by state and local governments:

> For example, an article from www.livetaxfree.com, which can best be described as delusional rant, states, "One of the greatest lies and myths in America today is that of property 'ownership.' U.S. citizens cannot hold title to property, only sovereign Citizens can. Since the socialist juggernaut was legislated via the New Deal in 1933, Americans have lost virtually all their property rights and land, having transferred their assets to the international bankers to pay an unpayable federal debt." The article promotes a book, sold for a mere $39.95, that will show how to "protect your land from unlawful liens," remove the requirements of property tax," and "remove your property from zoning restrictions."

Thompkins-El, 2006 WL 2433438, at *8 n.7; see also Daniel Lessard Levin & Michael W. Mitchell, A Law unto Themselves: The Ideology of the Common Law Court Movement, 44 S.D. L. Rev. 9, 14 (1999) ("Such schemes multiplied in the 1980s during the Midwestern farm crisis. During this time, farmers faced with foreclosure began to file bogus land patents which they believed would shield their property from any encumbrances by state or local officials, including county sheriffs serving eviction notices or warrants to seize their property. All of these attempts failed in the courts in which they were heard.") (footnotes omitted).

In this case, the court finds that the Plaintiff's Complaint does not allege a colorable claim of a constitutional violation by the defendants and any such federal claim he attempts to allege here appears frivolous on its face. Accordingly, Plaintiff has failed to allege sufficient factual allegations to raise a plausible claim supporting federal question subject matter jurisdiction. See Holloway, 669 F.3d at 452-53; Ross, 2012 WL 3590914.

Plaintiff has filed an amended "pleading" that contains nonsensical assertions referencing United States Code sections contain in the titles governing shipping and crimes

and criminal procedure, as well as the Uniform Commercial Code. (ECF No. 9.) However, none of these ramblings support a colorable federal claim. See Holloway, 669 F.3d at 452-53; Ross, 2012 WL 3590914.

**RECOMMENDATION**

Accordingly, the court recommends that the above-captioned case be dismissed without prejudice and without service of process. The court further recommends that the Plaintiff's motion for order to show cause (ECF No. 2) as well as the Plaintiff's motion to amend his order to show cause (ECF No. 9) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

September 25, 2012
Columbia, South Carolina

*Plaintiff's attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).